Case 14-1033, Nicole Harris v. Edward Lasseigne, et al. Oral argument, 15 minutes per side. Ms. Stepanski for the appellant. Good morning. May it please the court, Mercy Stepanski, on behalf of the defendant appellant officer Edward Lasseigne in this case, I reserve five minutes for rebuttal. Thank you. Good morning. As this court likely knows, the officers in this case were pursuing Mr. Kraft, who had been wielding a sawed-off shotgun and running through a residential neighborhood. They pursued him through some backyards. No at all. No at all. Okay. Well, then I will get right to the four points that the district court relied upon to deny qualified immunity in this case. First of all, the court indicated that there were photo stills from a DVD which captured almost the entire incident. And the court questioned whether Mr. Kraft would have been able to swing the weapon, the shotgun, toward the officers when they cut off his path at the privacy fence. The court suggested that perhaps he was unable to move at that point in order to swing the gun toward the officers. We would submit that pursuit to Scott v. Harris. That is a visible fiction. The Exhibit F to our motion for summary judgment consists of a DVD that was provided to this court from the dash cam of the vehicle. It doesn't show anything. Well, it shows up until the point where it shows his arms free. You know, I mean, Tahoe is still moving at that point. I mean, he sort of gets like that, and then he's out of the screen. Right. But that's very important that he gets like that because that shows that his arms are at least free and he's holding the shotgun in his right hand. But we don't have to rely just on that, the photos or the DVD or the officer's testimony that said that he then swung the sawed-off shotgun toward the officers. There's also medical evidence in the record, and that's at record pages 1081 and 1085, which indicate that he was shot once in the chest, and it was front to back and right to left, indicating that not only was he able to move, he swung almost all the way around before tossing the gun over the privacy fence. Well, I mean, the before tossing the gun part is where it sort of falls apart there. I mean, he might have rotated around after he'd thrown a gun, right? Well, there's no evidence to suggest that. I guess here's my basic problem, and I want to be candid so you can speak to it with your position. This seems like a total fact issue. Did he throw the shotgun over the fence before he gets shot or not? Total fact issue. Normally we don't have jurisdiction in these interlocutory appeals to address a fact issue. As I understand your argument, you're saying this case is an exception because of Scott, right? Is that? Actually, yes, Your Honor. And, I mean, I must say Scott, I think Scott gets cited a little bit more than it should. I mean, this is not a case where looking at the video obviously refutes the plaintiff's position. It's not remotely like Scott. I mean, I saw the video. It does not answer the question to me. It does not answer the question whether the decedent threw the shotgun over the fence before he was shot or not. And I want to be candid and let you go from there. I would really appreciate the opportunity to do that, Your Honor. Our position is that when you take the facts or the evidence as alleged by plaintiff and as actually supported by evidence, we concede those facts because what the plaintiff is doing is you don't concede he throws it over before he gets shot. Because that's just a theory. That's not based on evidence. That's just a theory. All the evidence suggests otherwise. It's a question of fact. But it's not, Your Honor, and this is why. They rely, first of all, on the inability to move to swing the gun toward the officers. That's refuted by the record. That's refuted by medical evidence. It's undisputed. Then they rely on Carl Harris' testimony, who's the neighbor, who initially gave an affidavit that conclusorily said, if the gun had been thrown after the gunshot, I would have seen it. But then Mr. Harris is deposed, and not only does he set forth in his deposition testimony a number of errors in his affidavit and a number of omissions, and those are at pages 65 to 66 of his death, and that's at record entry 1185, but he also details what he was doing at the time that the officer, LaShane, shot, and that is he said he was facing in the opposite direction, lowering himself into a chair, heard the gunshot, and then got up and looked out the door wall, and he indicated that his attention was not immediately drawn to Carolyn Newton's backyard. It was drawn to the area behind his backyard where he saw police vehicles. He also admitted, and that's at record entry 1175. That's really kind of impeachment or questions going to credibility, or it may go to what he saw, but it's still some evidence that he would have seen what happened. When you put it together with the officer's testimony, two saying they saw it, but the two right on the spot saying they did not see it, it also raises some question as to when you put it all together, what really happened here? Well, I'd like to address that, Your Honor, because we're conceding Carl Harris's testimony, but you have to take all of his testimony together, and Officer Miller is the only one who testified. He was the driver of the Tahoe. He's the only one who testified that he didn't see what happened with the gun. Officer Lesane said he pointed it directly. He was swinging it around and was leveling it directly at us. I feared for my life, and I shot once at center mass. Officers Davies and Werner also testified that at that moment, within one to two seconds, the testimony was, after the gun swung around, Officer Lesane shot. Within one to two seconds, he threw the gun. Davies didn't see where the gun went. Werner said he saw it go over the fence. But this is argument about whether there's a genuine issue of material fact. And there isn't one. Okay, but we don't have jurisdiction to consider that kind of argument, except, as I understand the law, except in a Scott scenario where a video palpably refutes the plaintiff's position, which I don't think is the case here. So you might be totally right about all this. But, I mean, in terms of, oh, you know, you look at all this evidence, no reasonable jury could find, but we have a jurisdictional problem. We don't review that sort of thing. Well, this court in Chapel v. Cleveland indicated that sometimes there are questions about admissibility, genuineness, and materiality that the court does need to look at when it's considering a qualified immunity case. And, in fact, Scott v. Harris, at page 380, specifically said the court only can, and that was in denial of summary judgment based on qualified immunity that went up to the Supreme Court. And the guy said, I was driving pretty normally, and it turned out to be a streets of San Francisco car chase. And the court said, I mean, there are limits to what we're going to sort of hold our nose and holler. That's right. The court basically said we don't want parties to make a mockery of the summary judgment standard and allow these qualified immunity cases to go to trial because, at that point, the immunity is effectively lost. But this case is far afield from that scenario. I mean, let's stipulate that you're right on this. Still, nobody's making a mockery of the standard here. Well, Your Honor, we submit that what the plaintiff is doing is really proffering speculation and theory. That's not supported by the evidence. There's no blood on the gun. We don't deny that because the evidence shows that the gun was disposed of before he started bleeding. The evidence shows that, and that's corroborated by medical evidence as well that wasn't countered by the plaintiff. What about the affidavit of this Ken Kataris, I think, who seems, I'm recalling, says something to the fact that young Mr. Kraft would not have been able to swing around, given the position he was in, and toss the gun over the fence? It's blatantly fictitious, Your Honor, and that's entirely refuted by medical evidence. What's blatantly fictitious? It is. It is. It's an opinion you just don't agree with, I take it? No, it's refuted by medical evidence because in the DVD, in the video, Mr. Kraft is shown running parallel to the privacy fence, and the Tahoe cuts him off. Then his arms go up, and then in stills, you can sort of see him starting to turn, but then the medical evidence shows that he was shot in the chest, front to back, right to left, which meant he turned almost all the way toward the officers. And that's unrefuted. The plaintiffs never submitted any medical evidence to counter that. And then the only other thing that Ken Kataris, who's a criminologist, said, is that certainly he would have shot more than once if he feared for his life. That's the only other piece of evidence that the judge... He said he thought he missed him. He did. He thought he missed him at first because he remained standing, and he shot him only 3 to 4 feet away. And he said... And this is consistent, too, with the officers. Disposed of the gun, said, Ow, you shot me, pulled his shirt out, and then started bleeding, collapsed on the vehicle, and then when they pulled the vehicle back, crumpled down between the fence and the vehicle. When did he throw the gun? Before he said, You shot me? Yes. Almost... It seems that when you put everything together and agreeing with what the plaintiffs have offered, too, it seems like it happened within 1 to 2 seconds, almost simultaneously. Like, maybe he was swinging it around to throw it. But when the officers see it leveling toward them, fearing for their life with a sawed-off shotgun directed toward them, they certainly were within their rights to fire and defend themselves. And that's exactly what qualified immunity is designed for. Okay. That's fine. You will have your 5 minutes of rebuttal. Thank you, Your Honors. Thank you very much. Good morning. Good morning. May it please the Court, Paul Brochet, on behalf of Mr. Craft. It makes me nervous to... It's always made me nervous to tell a court that they don't have jurisdiction. Because... But I don't think I have to do that today. So I'm going to be very brief. I hope you understand, it makes it seem like... Oh, it's going to have an immigration case before that, because that's what we hear all the time. That's right. Okay, but it makes it seem like we all want you to look at the facts. Judge Stee in this case made a very, very careful evaluation of the facts and came to the conclusion that there was a question of fact. I can argue with you kind of what we're doing here, which proves there's a question of fact. If you have any questions about any of the issues that we submitted to you, I'd be happy to answer them, but I really don't feel like I have to do that, because I know you're very well familiar with all these facts. The only thing that I didn't really hear mentioned was this was a trained law enforcement officer who was faced with what he calls or what he presumed to be an instance when he used his fatal force, and he fired one shot. Yet, in his sworn testimony and in his testimony to the investigators, he said, I don't know where the gun went. If we just look at common sense, if a man fears for his life and fires a shot at somebody and then doesn't know what happened, he said, I don't know if I missed or not. He's trained to keep firing. He admitted, I'll fire 50 shots. The officer sitting next to him didn't see the gun go over the fence, yet he seen it trained on him. And one to two seconds after the shot, the gun went over the fence, according to the other officers. That is specific and consistent with the affidavit from the witness who also testified. Common sense here, your honors, the man hears the shot and looks. Now, does that take a second or one second, a half a second? But this testimony by Mr. Harris was consistent with the facts. So, we have an issue here where this court should review the law. The law is not challenged. There are several facts here which create a legitimate question of facts. So, if you don't have any questions, I'll sit down. Thank you very much. And I'm back. I just would like to address briefly the comments by Brother Counsel with respect to Officer Lesane firing the shots. He did testify that he is trained to eliminate or quell. And in this case, he said, I saw the gun, I shot, and I no longer saw the gun. He admittedly didn't see where the gun went. Officers Werner and Davey saw where the gun went. He didn't fire anymore because he didn't see the gun anymore. Now, had he continued firing after the gun was disposed of, we'd be confronting a different use of force type of case. I probably saw the gun wasn't there. I mean, this happened really fast. It did, and that's exactly why qualified immunity is perfectly appropriate in this case. And I think when the court looks at the... I'm sorry. No, it's okay. Go ahead, please. I think when the court looks at the four things that the district court relied upon, I think that you'll see that there really is no question of fact. The only issue that we have that we're quarreling with the evidence that the district court relied upon is with respect to Mr. Craft's ability to move. And we think that the medical evidence in conjunction with the photo stills and the DVD and the officer's testimony and any... It's unrefuted. There's no testimony countering it from the plaintiff. Demonstrates that he was able to move. Ken Katsiris' affidavit is just speculation. Oh, I think from the photos that I see, he couldn't move. Well, his arms were up in the air, and he obviously did turn because he was shot in the chest, front to back, right to left. The rest of the evidence, we agree with. There was no blood on the gun. He did only shoot once. And when you look at the neighbor's testimony, he admitted, hey, it took me about two seconds. He testified in his deposition. I'm facing the opposite direction. I'm lowering myself in the seat. I hear the gunshot. I get up. I go over to my door wall and look. And my attention, he said, is not immediately drawn to where the gun landed. It's drawn to my backyard, okay? And he admits in his deposition that he couldn't see the grassy area of the neighbor's yard where the gun landed from his house. And the officers testified that it took one to two seconds for Jakari Craft to toss the gun. It's all consistent. There is no question of fact. The only issue of fact is one about ability to move, and that is entirely refuted and not countered by any evidence. I would submit that the district court, Judge Stevens said, this is a closed case, and he stayed the matter to allow this court to consider it. The plaintiff had moved to dismiss the case based upon a lack of jurisdiction. Another panel of this court denied it. I would submit that when the court focuses in on those four issues that the district court relied upon, there is no basis to deny summary judgment or qualified immunity in this case. And I would respectfully submit that the court reversed the denial. Okay. Thank you, counsel, both of you, for your arguments today. We really appreciate your appearance today. The case will be submitted and you may call the next case.